Submitted June 15, 2021, affirmed June 8, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARLTON MARTIN MORRIS,
*Defendant-Appellant.*

Washington County Circuit Court
19CR10104, 19CR24856;
A171696 (Control), A171697

513 P3d 17

In a consolidated criminal appeal, defendant appeals the trial court's supplemental restitution judgment after his conviction for assault (ORS 163.160) in one case and the judgment of conviction for providing false information to a peace officer (ORS 162.385) and interfering with a peace officer (ORS 162.247) in the other case. Defendant challenges the trial court's denial of his motion to suppress, arguing that the trial court erred in concluding that the officer had reasonable suspicion to stop him. *Held*: The trial court did not err. The Court of Appeals rejected defendant's challenge to the supplemental restitution judgment without discussion. In addressing the suppression issue, the Court of Appeals concluded that, in addition to defendant's presence in a high crime area—which would not have been sufficient alone—there was enough additional evidence to support the officer's determination that he had reasonable suspicion to believe that defendant had just committed the crime of theft of mislaid property and, thus, to stop him.

Affirmed.

Janelle F. Wipper, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.

MOONEY, P. J.

Affirmed.

## MOONEY, P. J.

In this consolidated criminal appeal, defendant appeals the trial court's supplemental restitution judgment following his conviction for assault (ORS 163.160), Case No. 19CR10104, and the judgment of conviction for providing false information to a peace officer (ORS 162.385) and interfering with a peace officer (ORS 162.247), Case No. 19CR24856. A discussion regarding the supplemental restitution judgment in Case No. 19CR10104 would not benefit the bench, bar, parties, or the public; we reject defendant's first assignment of error and affirm the supplemental judgment in that case without discussion. We write to address defendant's second assignment of error, which concerns Case No. 19CR24856 and which challenges the trial court's denial of his motion to suppress. We reject that assignment for the reasons that follow, and we affirm.

We are bound by the trial court's findings of fact that are supported by the record. *State v. Williams*, 297 Or App 384, 385, 441 P3d 242 (2019). In the absence of express findings, we presume that the trial court made findings consistent with the ultimate conclusion. *Id*. Otherwise, we review a trial court's denial of a motion to suppress for legal error. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017).

On February 10, 2019, Officer Maurer was patrolling what he described as a "high crime area" near a bridge with known problems such as "graffiti[i]ng, transients, and littering, and people leaving behind stuff that shouldn't be left there." Maurer testified that he had patrolled this area before and while he does not always see people camping, there is "always new stuff" when he patrols there. He saw defendant step out from behind some bushes under the bridge at 4:15 a.m. and walk toward him. Maurer asked defendant what he was doing as he approached, and defendant responded that he found a backpack from "down where he was coming up from" and two books that were with it. At this point, Maurer believed that he had reasonable suspicion to stop defendant. He informed defendant that he had committed the crime of theft of mislaid property and ordered defendant to sit down.

Maurer called other officers to assist with the stop. Defendant provided a false name to the other officers. They ran defendant's information through facial recognition software, learned that he had an active warrant, and placed defendant under arrest. Defendant then attempted to run away, did not stop when verbally commanded to do so, and continued to run until he was tackled by an officer. At trial, defendant filed a motion to suppress the backpack and books based on the theory that Maurer did not have reasonable suspicion to stop him for theft of mislaid property based on their limited interaction to that point. The trial court denied the motion.

On appeal, defendant argues that the motion to suppress was improperly denied because the trial court incorrectly concluded that Maurer had reasonable suspicion to stop defendant. The state argues that Maurer did have reasonable suspicion and that, even if he did not, the evidence is still admissible under an exception to the exclusionary rule. We agree with the state that the officer had reasonable suspicion to stop defendant.

Article I, section 9, of the Oregon Constitution provides that

> "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

That constitutional protection applies to encounters between law enforcement officers and citizens, when there has been "a temporary restraint of a person's liberty for the purpose of criminal investigation—*i.e.*, a 'stop.'" *State v. Rodgers/ Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010). Such stops are "seizures," and they "must be justified by a reasonable suspicion of criminal activity." *Id.* An officer must reasonably suspect, "based on specific and articulable facts," that the person stopped committed a crime or was about to commit a crime. *Maciel-Figueroa*, 361 Or at 182. A stop is lawful if the officer had an actual subjective belief that the person stopped committed a specific crime or was about to commit

a specific crime, and the officer's subjective belief was objectively reasonable based on the totality of the circumstances at the time of the stop. *Id.*

Here, the parties are in agreement that the defendant was stopped at the point that Maurer told him that he had committed the crime of theft of mislaid property and ordered him to sit down. The only issue is whether or not, at that point in the encounter, Maurer's subjective belief that defendant had committed that particular crime was objectively reasonable. ORS 164.065 defines theft of mislaid property:

> "A person who comes into control of property of another that the person knows or has good reason to know to have been lost, mislaid or delivered under a mistake as to the nature or amount of the property or the identity of the recipient, commits theft if, with intent to deprive the owner thereof, the person fails to take reasonable measures to restore the property to the owner."

Maurer testified that his subjective belief that defendant had just committed the crime of theft of mislaid property was based on the area, the time of night, the state of the property, and his conversation with defendant.

Defendant's mere presence in a "high crime area" is insufficient by itself to justify an officer's reasonable suspicion. *State v. Acuna*, 264 Or App 158, 168, 331 P3d 1040 (2014). However, when a defendant is more than "merely present" in a high crime area and engages in further suspicious activity, the circumstances can rise to reasonable suspicion. *State v. Dampier*, 244 Or App 547, 552-53, 260 P3d 730 (2011). This was an area with which Maurer was familiar. He knew that people often left personal items behind at that location. When Maurer asked defendant what he was doing, defendant showed him a "clean and new" backpack and two books that were in "a similar condition," which indicated to Maurer that the property was likely not purposely left behind or dumped. Defendant told Maurer that he had found the backpack and that he liked to read. Maurer surmised from this that the property did not belong to defendant, and that he had no intention of returning the property to its owner. That evidence was sufficient to support a

determination that Maurer had reasonable suspicion that defendant was more than merely present in a high crime area and had just committed the crime of theft of mislaid property.

The stop by Maurer was constitutional and the trial court correctly denied the motion to suppress.

Affirmed.